ALVES, APPELLEE, *v.*
BALDAIA ET AL., APPELLANTS.

(No. L-83-302—Decided
January 27, 1984.)

*Mr. Gary W. Osborne,* for appellee.
*Mr. Jim Miller,* for appellants.

HANDWORK, J.  This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas.

On July 29, 1982, Keith Alves, plaintiff-appellee herein, filed a complaint in the trial court seeking to collect on a promissory note in the amount of $15,000, plus interest. Defendants-appellants thereafter filed an answer to

said complaint. On January 5, 1983, Alves filed a motion for summary judgment with supporting materials. On February 18, appellants filed a cross-motion for summary judgment, accompanied by an affidavit and supporting memorandum. The trial court granted Alves' motion for summary judgment, in part, and denied appellants' motion for summary judgment. Thereafter, the case proceeded to trial on the remaining issues, after which the court entered judgment in favor of Alves.

The pertinent facts giving rise to this litigation are undisputed. In January 1973, Alves loaned $15,000 to appellants Beatrice and William Baldaia. Said appellants, in return, executed a promissory note payable to Alves' wife, Joyce Ann Alves (now Joyce Schaller), also an appellant herein.

In February 1978, Alves and Schaller were divorced. The separation agreement between the parties provided, in part, that:

"Wife agrees to assign to Husband any and all right, title, and interest she may have in a certain note, executed by her parents, dated January 3, 1973 on or before date of final hearing."

The promissory note, in relevant part, contained the following language:

"Pay to the order of Keith R. Alves.

"/s/ Joyce Ann Alves"

Sometime later, Alves sought to collect payment on the note from the makers, Beatrice and William Baldaia. When they refused to pay the sum covered by the note, Alves notified his former spouse that the makers had dishonored the instrument. Payment was thereafter sought from her on the theory that she was secondarily liable as an endorser. In the trial court, Schaller claimed that her transfer of the promissory note to Alves, pursuant to the separation agreement, constituted an "assignment" of her rights and interests therein, not a formal negotiation of the note. As indicated above, both parties filed cross-motions for summary

judgment. In granting Alves' motion on this issue, the trial court held that, as a matter of law, "Joyce Schaller's signature on the note operated as an indorsement."

In bringing this appeal, appellants present a single assignment of error for review:

"It was error for the trial court to deny defendant Joyce Schaller's motion for summary judgment."

Appellant Schaller maintains that the separation agreement's specific reference to the promissory note establishes that the transfer was an assignment only, not a negotiation of the instrument. While it appears that the separation agreement was executed contemporaneously with the transfer of the note, the terms of the note do not in any way refer to the separation agreement, and *this* is the crucial point.

R.C. 1303.18(A) (UCC 3-119[1]) states:

"As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument."

Although R.C. 1303.18(A) contemplates certain circumstances in which a separate writing may affect the terms of an instrument (such as a promissory note), the Official Comment to that section makes clear that the inquiry is controlled by what the *instrument itself* states or reflects, not what the collateral agreement says. See Official Comment 5. In addition, the kinds of collateral writings suggested by the Official Comment are those which attempt to "modify or affect" the terms of the instrument. In this case, the separation agreement says nothing whatsoever about the

particular terms of the promissory note. Also, the typical agreements mentioned in the Official Comment do not appear to include agreements solely limited to *conveyance* of the instrument, as is the case here.

The "four corners" of this promissory note neither expressly nor impliedly indicate anything about the separation agreement. Cf. R.C. 1303.04 (UCC 3-105), and Official Comment 8 thereto. Thus, the question of whether the note was formally negotiated or merely "assigned" must be answered solely by examining the face of the instrument.

In this same context, and insofar as the collateral separation agreement purports to be evidence that the transfer of the promissory note was an "assignment," the more fundamental objection is that the agreement was inadmissible to show that Schaller signed the promissory note in any capacity other than that of an endorser. See R.C. 1303.38 (UCC 3-402), and the Official Comment thereto. Parol evidence is inadmissible to show that the endorser's intention in signing the instrument was at variance with the contract of endorsement. As the trial court stated: "The legal effect of the signature * * * is an indorsement, *regardless of the subjective intention of the signer.*" (Emphasis added.) See *Shannon* v. *Universal Mortgage & Discount Co.* (1927), 116 Ohio St. 609. Schaller cannot be relieved of her liability as an endorser merely because she previously or contemporaneously executed a collateral separation agreement, intending to "assign" to Alves

"any and all right, title, and interest" in the promissory note. Cf. *Byers* v. *Appleman* (1935), 50 Ohio App. 135 [3 O.O. 468]. Had Schaller wished only to "assign" the note, as she uses the term, she should have delivered the instrument to Alves *without signing it.* Then, the instrument would not have been technically negotiated, and he would not have acquired the rights of a holder. See R.C. 1301.01(T)(UCC 1-201[20]). See, also, R.C. 1303.23(A) (UCC 3-202[1]), which states that "* * * [i]f the instrument is *payable to order* it is negotiated by delivery *with any necessary indorsement* * * *"* (emphasis added); and *Lewis* v. *Palmer* (1974), 20 Ill. App. 3d 237, 240, 313 N.E. 2d 656, 659 (transfers of instruments invalidly negotiated are assignments only). See, generally, White & Summers, Uniform Commercial Code (2 Ed. 1980), Section 13-10, at pages 504-505.

As matters stood, however, the promissory note here contained the words: "Pay to the order of Keith R. Alves," below which Schaller signed her name. This constituted a special endorsement by the payee, see R.C. 1303.25(A) (UCC 3-204[1] ), and formal negotiation of the instrument occurred on its delivery to Alves. See R.C. 1303.23(A), quoted, in part, *supra.* Under R.C. 1303.38 (UCC 3-402), "[u]nless the instrument clearly indicates that a signature is made in some other capacity *it is an indorsement.*" (Emphasis added.) Schaller's signature on the promissory note is, therefore, conclusively presumed to be (and operates as) an endorsement.[1]

---

[1] In this context, too, R.C. 1303.23(D) (UCC 3-202[4] ) is pertinent to Schaller's characterization of the transaction as an "assignment" of rights:

"Words of assignment, condition, waiver, guaranty, limitation, or disclaimer of liability and the like accompanying an indorsement do not affect its character as an indorsement."

Official Comment 5 thereto states:

"Division (D) is intended to reject decisions holding that the addition of such words as 'I hereby assign all my right, title and interest in the within note' prevents the signature from operating as an indorsement. Such words usually are added by laymen out of an excess of caution and a desire to indicate formally that the instrument is con-

Having concluded that she endorsed the promissory note, we now turn to Schaller's liability on her contract of endorsement, which is an analytically separate question. The contractual effect of an endorsement is controlled by R.C. 1303.50(A) (UCC 3-414[1]), which states, in pertinent part:

"Unless the indorsement otherwise specifies, as by such words as 'without recourse,' *every indorser engages that* upon dishonor and any necessary notice of dishonor and protest *he will pay the instrument according to its tenor at the time of his indorsement to the holder* or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so." (Emphasis added.)

The Official Comment to this section clearly indicates the only method by which an endorser can avoid (or "disclaim") secondary liability on the instrument if the maker defaults:

"* * * An indorser may disclaim his liability on the contract of indorsement, *but only if the indorsement itself so specifies.* Since the disclaimer varies the written contract of indorsement, the disclaimer itself must be written on the instrument and cannot be proved by parol. *The customary manner of disclaiming the indorser's liability under this section is to indorse 'without recourse.'* Apart from such a disclaimer *all indorsers incur this liability,* without regard to whether or not the indorser transferred the instrument for value or received con-

veyed, rather than with any intent to limit the effect of the signature."

Thus, even if actual language of "assignment" had accompanied Schaller's signature *on the note,* this would still not have altered its character as an endorsement. See, also, R.C. 1303.38(UCC 3-402).

sideration for his indorsement." (Emphasis added.) Official Comment 1 to R.C. 1303.50.

Thus, when Schaller signed the promissory note, she contracted to pay the instrument, according to its tenor, to the holder thereof if the maker dishonored the note at maturity. R.C. 1303.50(A), *supra.* See, also, Annotation (1969), 23 A.L.R. 3d 932, at Section 12. As explained by Official Comment 1 to R.C. 1303.50, if Schaller had desired to pass title to the note (*i.e.,* to formally negotiate it), *without creating any potential contract liability for herself,* she had but to qualify her endorsement with the language "without recourse." However, not having done so, she acquired the full contractual liability of an endorser and was thereby obligated to pay the instrument following dishonor by the makers.[2] Consequently, the trial court did not err in reaching this conclusion or in granting Alves' motion for summary judgment on this issue.

Accordingly, appellants' sole assignment of error is not well-taken.

On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. This case is remanded to said court for execution of judgment and for assessment of costs. Costs assessed against appellants.

*Judgment affirmed.*

DOUGLAS and RESNICK, JJ., concur.

[2] This discussion assumes, of course, that Schaller received proper notice of dishonor from the endorsee (Alves) after he presented the note to the makers for payment. See R.C. 1303.50(A) (UCC 3-414[1]). The parties to this appeal have agreed that the preconditions of presentment and notice of dishonor were fulfilled.