ALL AMERICAN FINANCE COMPANY ET AL., APPELLANTS, *v.*
PUGH SHOWS, INC. ET AL., APPELLEES.

[Cite as All American Finance Co. *v.* Pugh Shows, Inc. (1987),
30 Ohio St. 3d 130.]

(No. 86-1410—Decided May 20, 1987.)

*Lantz, Lantz & Lipp, James A. Lantz* and *H. James Stevenson,* for appellants.

*Isaac, Brant, Ledman & Becker* and *Randy S. Kurek,* for appellee Pugh Shows, Inc.

*Strip, Fargo, Schulman & Hoppers* and *Paul W. Leithart II,* for appellee Cheri Pugh.

HERBERT R. BROWN, J. The issue for determination is whether All American is a holder in due course thereby taking the promissory note free of appellees' claims. We hold that it does not have such status and, accordingly, affirm the decision of the court of appeals.

R.C. Chapter 1303 confers certain rights and protections upon a holder in due course consistent with its goal to promote the unrestrained transferability of negotiable instruments. Specifically, a holder in due course takes an instrument free from all claims and defenses with certain limited exceptions. See R.C. 1303.34 (UCC 3-305).[1] If All American is a

---

[1] R.C. 1303.34 provides:

"To the extent that a holder is a holder in due course he takes the instrument free from:

"(A)  all claims to it on the part of any person; and

"(B)  all defenses of any party to the instrument with whom the holder has not dealt except:

"(1)  infancy, to the extent that it is a defense to a simple contract; and

"(2)  such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

"(3)  such misrepresentation as has induced the party to sign the instrument with neither

holder in due course, then it is entitled to judgment. Conversely, if All American does not have holder in due course status, it takes the note subject to all valid claims and defenses which would be available on a simple contract. R.C. 1303.35 (UCC 3-306).

## I

Five criteria must be satisfied to establish holder in due course status: (1) one must be a holder, (2) of a negotiable instrument, (3) taken for value, (4) in good faith, and (5) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. See White & Summers, Uniform Commercial Code (2 Ed. 1980) 551-552, Section 14-2; R.C. 1303.31 (UCC 3-302); *Arcanum National Bank* v. *Hessler* (1982), 69 Ohio St. 2d 549, 552, 23 O.O. 3d 468, 470, 433 N.E. 2d 204, 208. All American has met the last three requirements. The controversy centers on whether the assignment of the note constituted a proper negotiation of the instrument, thereby making All American a holder.[2]

The requirements for negotiation are governed by R.C. 1303.23 (UCC 3-202), which provides in pertinent part:

"(A) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; * * *

"(B) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof."[3]

---

knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

"(4) discharge in insolvency proceedings; and

"(5) any other discharge of which the holder has notice when he takes the instrument."

[2] R.C. 1301.01(T) (UCC 1-201[20]) defines a "holder" as "a person who is in possession of a document of title or a certificated instrument or an investment security drawn, issued, or indorsed to him or to his order or to bearer or in blank."

[3] Neither party has raised the issue of allonge, *i.e.*, the validity of indorsement by separate instrument. Official Comment 3 to R.C. 1303.23 explains the conditions under which an indorsement on a separate document is sufficient for negotiation:

"Division (B) follows decisions holding that a purported indorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation. The indorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it. Such a paper is called an allonge."

Although we need not reach the issue, we note that several jurisdictions hold that indorsement by allonge is permitted only where there is no longer room on the instrument itself due to previous indorsements. See 71 Ohio Jurisprudence 3d (1986) 322, Negotiable Instruments, Section 280; *Pribus* v. *Bush* (1981), 118 Cal. App. 3d 1003, 173 Cal. Rptr. 747; *Estrada* v. *River Oaks Bank & Trust Co.* (Tex. Civ. App. 1977), 550 S.W. 2d 719; *Tallahassee Bank & Trust Co.* v. *Raines* (1972), 125 Ga. App. 263, 187 S.E. 2d 320. See, generally, Annotation, Indorsement of Negotiable Instrument by Writing Not on Instrument Itself (1968),

The note at issue was made "payable to Robert C. Pugh, or order," and, thus, only properly negotiated by delivery with a necessary indorsement. Appellants urge this court to find that the assignment attached to the note serves as a special indorsement[4] or, alternatively, as a restrictive indorsement.[5] We cannot accept either proposition since the transfer to All American did not operate as an indorsement.

The document entitled "Assignment" signed by Robert Pugh and affixed to the promissory note explicitly states that appellants intended it to "* * * serve as an Assignment of all Rights, Title and Interest in the attached Note * * * being used as collateral on Loan #1295 to All American Finance Company until such date as Loan #1295 is paid in full."

Under Ohio common law, language on the back of a note was construed as an assignment if it purported to be an indorsement but also specified that the transfer was for the purpose of collateral security. *Carius* v. *Ohio Contract Purchase Co.* (1928), 30 Ohio App. 57, 164 N.E. 234. However, appellants correctly point out that R.C. 1303.23(D) (UCC 3-202[4]) declares that "[w]ords of assignment, condition, waiver, guaranty, limitation, or disclaimer of liability and the like accompanying an indorsement do not affect its character as an indorsement." The purpose of

---

19 A.L.R. 3d 1297. Some courts have specifically held that the transfer of a note as collateral security by a separate document stapled to the note does not suffice as an indorsement. Consequently, the transferee is neither a holder nor a holder in due course, but merely an assignee who takes the note subject to any defense which could be raised against the payee. See, *e.g., Security Pacific Natl. Bank* v. *Chess* (1976), 58 Cal. App. 3d 555, 129 Cal. Rptr. 852; *Estrada* v. *River Oaks Bank & Trust Co., supra; Tallahassee Bank & Trust Co.* v. *Raines, supra.*

[4] R.C. 1303.25(A) (UCC 3-204[1]) states that "[a] special indorsement specifies a person to whom or to whose order it makes the instrument payable. Any instrument specially indorsed becomes payable to the order of the special indorsee and may be further negotiated only by his indorsement."

[5] R.C. 1303.26 (UCC 3-205) provides:
"An indorsement is restrictive which either:
"(A)  is conditional; or
"(B)  purports to prohibit further transfer of the instrument; or
"(C)  includes the words 'for collection,' 'for deposit,' 'pay any bank,' or like terms signifying a purpose of deposit or collection; or
"(D)  otherwise states that it is for the benefit or use of the indorser or of another person."
R.C. 1303.27 (UCC 3-206) states in part:
"(A)  No restrictive indorsement prevents further transfer or negotiation of the instrument.
"* * *
"(D)  The first taker under an indorsement for the benefit of the indorser or another person must pay or apply any value given by him or on the security of the instrument consistently with the indorsement and to the extent that he does so he becomes a holder for value. In addition, such taker is a holder in due course if he otherwise complies with the requirements of section 1303.31 of the Revised Code on what constitutes a holder in due course. * * *"

this provision was to repudiate decisions holding that the inclusion of such words as "I hereby assign all of my right, title, and interest in the within note" precludes giving effect to a signature as an indorsement. See Official Comment 5 to R.C. 1303.23; *Alves* v. *Baldaia* (1984), 14 Ohio App. 3d 187, 189, 14 OBR 205, 208, 470 N.E. 2d 459, 462-463, at fn. 1.

## II

Nevertheless, R.C. 1303.23(D) must be read in conjunction with R.C. 1303.23(C) (UCC 3-202[3]) which dictates that where an indorsement conveys less than either (1) the entire instrument or (2) any unpaid residue, it is a partial assignment and, thus, ineffective for negotiation. See *Lipkowitz & Plaut* v. *Affrunti* (1978), 95 Misc. 2d 849, 407 N.Y. Supp. 2d 1010; *Hewett* v. *Marine Midland Bank* (1982), 86 App. Div. 2d 263, 449 N.Y. Supp. 2d 745. See, also, *Edgar* v. *Haines* (1923), 109 Ohio St. 159, 141 N.E. 837, 38 A.L.R. 795; *Illinois State Bank* v. *Yates* (Mo. App. 1984), 678 S.W. 2d 819. Cf. *Wood* v. *Willman* (Wyo. 1967), 423 P. 2d 82.

In the case *sub judice*, Robert Pugh did not totally and irrevocably transfer all of his interest in the note to All American. Had he done so, the words of assignment could operate as an indorsement. It is apparent, however, from an examination of the collateral assignment that Robert Pugh retained an interest in the note, to wit: a claim to the proceeds after his debt to All American was paid.[6] This point is supported by an examination of the complaint filed by All American and Robert Pugh. The complaint states: "2. Defendant [PSI] owe(s) to plaintiffs on said note the sum of Two Hundred Thousand Dollars ($200,000.00), with interest at the rate of 10 per cent per annum from the 13th day of June, 1984. *The present balance due on the obligation of Robert C. Pugh is One Hundred Seventy Two Thousand Five Hundred Dollars* ($172,500.00) *owed by him to All American Finance Company.*" (Emphasis added.)

Since Robert Pugh retained ownership of all proceeds not required to satisfy his obligation to All American, the collateral assignment to All American does not constitute an indorsement and does not clothe All American with holder in due course status.[7]

## III

Accordingly, we hold that where, as here, a note is transferred by way of collateral assignment and the transferor retains an interest in the note,

---

[6] Robert C. Pugh states in the court proceedings that he claims no interest in the note. However, a partial assignment cannot be resurrected by such an after-the-fact disclaimer.

[7] We note that All American could have required the unqualified indorsement of Robert Pugh on the note. All American could then have executed a separate instrument establishing its security interest without losing its status as a holder in due course even though the indebtedness to All American was less than the full amount of the note. R.C. 1303.22(C) (UCC 3-201[3]).

the transfer does not constitute a negotiation which will confer holder in due course status on the transferee.

The judgment of the court of appeals is affirmed and the cause is remanded to the common pleas court for further proceedings.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES and DOUGLAS, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment only.