JOURNAL ENTRY AND OPINION
Plaintiff-appellants Albert Shaker, Jr., and Albert Shaker, III (hereafter collectively referred to as the Shakers) sued defendant-appellee The Russian Tea Room Corp. in the Cuyahoga County Common Pleas Court for failure to pay the sum of $20,000 due and owing on a promissory note executed by the Russian Tea Room and held by the Shakers. The trial court awarded the Russian Tea Room a summary judgment, and the Shakers appealed. We conclude that the court erred in granting summary judgment to the Russian Tea Room. Accordingly, we reverse and remand for further proceedings.
Understanding this litigation requires a review of several other transactions and three lawsuits. The record before us indicates that on July 15, 1996, Potopsky Enterprises, Inc., signed a purchase agreement to sell to Eagle Management Technologies, Inc. (hereafter Eagle Management), the restaurant known as Patrick's Bar Grill, located at 5100 Mayfield Road in Lyndhurst, Ohio, and other related business assets. On September 23, 1997, however, Eagle Management and its principals filed Case No. 340951 in the Cuyahoga County Common Pleas Court against Potopsky Enterprises, Inc., Patrick Potopsky individually, and others. Eagle Management's complaint included allegations of fraud and breach of contract in connection with the purchase agreement. The Potopsky defendants in turn asserted a counterclaim for breach of contract against Eagle Management.
During October and November 1997, Aleksandr Shneyder, the president of the Russian Tea Room Corp., entered into negotiations with Patrick Potopsky to purchase and transfer Ohio Liquor Permit No. 7044455 and the use of the permit premises located at 5100 Mayfield Road in Lyndhurst, Ohio. Potopsky says he advised the Russian Tea Room that litigation was pending in the Cuyahoga County Court of Common Pleas with Eagle Management Technologies, Inc. Potopsky also says, however, that he never advised Russian Tea Room that Eagle Management had a valid claim against the Liquor License. For his part, Aleksandr Shneyder says Potopsky told Shneyder and his counsel that certain claims and liens existed against said liquor permit, specifically including, but not limited to the claims of the Ohio Department of Taxation, the Ohio Department of Liquor Control, Eagle Management, Inc., and federal taxes.
In November 1997, the Russian Tea Room, Inc., executed the promissory note which is the subject of the case now before us. The promissory note stated:
 For value received, the undersigned Russian Tea Room, Inc., an Ohio Corporation, its heirs, executors, administrators, successors or assigns, promises to pay to the order of Patrick Potovsky [sic], his heirs, executors, administrators, successors or assigns, the sum of Twenty Thousand Dollars ($20,000.00). This note shall bear interest at the rate of zero per cent (0%) per annum. This note shall be payable in full upon the transfer to the Russian Tea Room, Inc., or its assigns, of Ohio Liquor Permit Number 7044455, free of any and all liens or encumbrances, specifically including, but not limited to, any and all federal, state or local taxes.
 Should it be necessary to pay any liens, taxes or encumbrances in order to complete the transfer of said Liquor Permit, Russian Tea room [sic], Inc., or its assigns, may deduct any monies it paid to remove any liens, taxes or encumbrances from the balance due on the within note.
 This note is given for the unpaid balance owing t Patrick Potovsky for the purchase and transfer of Ohio Liquor Permit Number 7044455.
On November 24, 1997, Patrick Potopsky, on behalf of Potopsky Enterprises, Inc., and Aleksandr Shneyder, on behalf of the Russian Tea Room, also executed an application to transfer Liquor Permitosic No. 7044455 from Potopsky Enterprises, Inc. to the Russian Tea Room.[1] On the same day, Patrick Potopsky endorsed the Russian Tea Room's promissory note over to Albert Shaker, Jr., and Albert Shaker, III, and delivered possession of the note to the Shakers. Potopsky states that the endorsement and delivery of the note to the Shakers was payment for an antecedent debt Potopsky owed to the Shakers. Potopsky further states that, shortly thereafter, he advised Russian Tea Room attorney Keith Belkin that he had endorsed the note to the Shakers.
The docket to Case No. 340951 reflects that on November 24, 1997, Eagle Management filed a motion for a temporary restraining order and preliminary and permanent injunctive relief. That docket further reflects that an order was entered on November 26, 1997, granting Eagle Management's motion for a temporary restraining order, with the consent of Potopsky's counsel Brian Cruse.[2]
On January 21, 1998, the court in Case No. 340951 entered a consent judgment entry under which Eagle Management and the Potopsky defendants agreed, among other things, that the Potopsky defendants would refrain from disposing of, selling or otherwise alienating the assets which form the subject matter of the contract between the parties except that Defendants may solicit offers to purchase those assets. However, Defendants agree to grant Plaintiffs a first right of refusal to match any other within five business days. Any proceeds obtained from the sale of the assets shall be placed in escrow with [Potopsky attorney] Brian Cruse.
After learning about the application, then pending with the Ohio Department of Liquor Control, requesting transfer of Liquor Permit No. 7044455 from Potopsky Enterprises, Inc. to the Russian Tea Room, Eagle Management filed a motion on June 30, 1998 in Case No. 340951 to have the Potopsky defendants show cause why they should not be held in contempt of the January 21, 1998 consent judgment entry. A July 2, 1998 order scheduled the matter for hearing on July 20, 1998. On July 23, 1998, the court entered an order resetting the hearing to August 5, 1998.
On July 31, 1998, a notice to stay the proceedings in Case No. 340951 was filed as a result of the filing of a bankruptcy petition on behalf of Patrick Potopsky. On August 13, 1998, however, the court in Case No. 340951 entered an order granting Eagle Management's motion to show cause against the Potopsky defendants. On August 19, 1998, a supplemental notice to stay proceedings was filed based on Potopsky's pending bankruptcy. On August 28, 1998, the court acknowledged Potopsky's bankruptcy and stayed further proceedings pursuant to 11 U.S.C. § 362.
Meanwhile, on August 6, 1998, Eagle Management filed Case No. 360939 in the Cuyahoga County Common Pleas Court against The Russian Tea Room Corporation, dba The Russian Tea Room, Inc. Eagle Management's complaint alleged that its transfer application for the liquor license, which had been pending with the Ohio Department of Liquor Control, had been canceled by Potopsky Enterprises, Inc.; that Potopsky had contracted to sell the liquor license to The Russian Tea Room; and that The Russian Tea Room had intentionally interfered with Potopsky's contract to transfer the liquor license to Eagle Management. Contemporaneous with the filing of its complaint, Eagle Management requested and obtained a temporary restraining order enjoining The Russian Tea Room from doing any act which would result in the transfer of liquor license number 7044455 from Potopsky Enterprises, Inc. to the [Russian Tea Room]. The court scheduled a hearing on August 20, 1998, on Eagle Management's application for preliminary and permanent injunctive relief. The docket for Case No. 360939 reflects that on September 1, 1998, the court entered an order which continued the temporary restraining order and scheduled a hearing for preliminary injunction for September 9, 1998. On September 18, 1998, the court in Case No. 360939 entered an order reporting that the case had been settled and that counsel were to submit a formal journal entry.
According to Potopsky, Ohio Liquor Permit No. 7044455 was transferred from Potopsky Enterprises, Inc. to The Russian Tea Room Corp. on October 1, 1998.
On December 1, 1998, an agreed judgment entry between Eagle Management and The Russian Tea Room was entered in Case No. 360939. That entry provided, in relevant part, as follows:
 The Court takes judicial notice of the prior proceedings of the Cuyahoga County Court of Common Pleas in case number 340951 entitled Eagle Management Technologies, Inc. v. Potopsky Enterprises, Inc. et al. wherein it was determined that Eagle Management Technologies, Inc. had a claim against liquor license Number 7044455 by virtue of an Agreed Journal Entry and that the Agreement by Potopsky Enterprises, Inc. to sell said liquor license to The Russian Tea Room Corp. was in violation of said Agreed Journal Entry as evidenced by the Court's grant of Eagle Management's Motion to Show Cause. By virtue of the prior determination and agreement of the parties, this Court recognizes Eagle Management Technologies' prior rights to said license.
IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that:
 1. Defendant [The Russian Tea Room Corp.] shall immediately deliver the sum of $20,000.00 to its attorney, Keith E. Belkin, to be deposited into an IOLTA account and held in trust until such time as a certain liquor license shall transfer from Potopsky Enterprises, Inc. to The Russian Tea Room Corp., and that upon transfer of said license, Keith Belkin shall immediately deliver the monies deposited to David M. Wise, attorney for Plaintiff Eagle Management Technologies, Inc.
 2. Defendant [The Russian Tea Room Corp.] represents and warrants that it shall use its best good faith efforts to effectuate the transfer of the subject liquor license as soon as possible.
 3. Plaintiff [Eagle Management Technologies, Inc.] agrees to the immediate dismissal with prejudice of this matter pursuant to Rule 41(A) of the Ohio Rules of Procedure.
IT IS SO ORDERED.
Potopsky states that he received no notification regarding Case No. 360939 and had no knowledge of the Agreed Judgment Entry entered into between those parties prior to their execution of that Entry. Potopsky furthers states that he did not receive any payments on the promissory note and that the balance due was $20,000.00 when he endorsed the note over to the Shakers.
On February 2, 1999, the Shakers filed this action against The Russian Tea Room Corp. The Shakers' complaint alleges that after Potopsky Enterprises, Inc. transferred Ohio Liquor Permit No. 7044455 to Russian Tea Room, Inc., on October 1, 1998, the Shakers made demand on The Russian Tea Room for payment due in the amount of $20,000 pursuant to the promissory note and that The Russian Tea Room had failed to make payment on demand.
For its part, The Russian Tea Room denied that it owed any amount on the promissory note. The Russian Tea Room states that it paid the following expenses to obtain the liquor permit:
 11/26/97 Ohio Department of Liquor Control $ 115.00 02/10/98 Ohio Department of Taxation 695.20 09/25/98 Ohio Department of Liquor Control 2,277.00 11/02/98 Eagle Management Technologies, Inc. 20,000.00 _________ TOTAL PAYMENTS 23,087.20
The Russian Tea Room maintains that its payment of $23,087.20 represented payments of liens, taxes or encumbrances in order to complete the transfer of Liquor Permit No. 7044455 and, under the terms of the promissory note, such payments would be deducted from any balance due on the note. Because those payments exceeded any amount due on the promissory note, The Russian Tea Room contends that it owed no further payment to the Shakers on the promissory note.
The Shakers and The Russian Tea Room each moved for summary judgment. On October 5, 1999, the trial court granted The Russian Tea Room's motion for summary judgment and denied the Shakers' motion for summary judgment. The court ruled that The Russian Tea Room was entitled to a claim in recoupment for $20,000" under R.C.1303.35 for the amount paid to Eagle Management to obtain the liquor permit.
The Shakers present these two assignments of error in support of their appeal:
 I. THE PROMISSORY NOTE WAS NOT ENCUMBERED BY THE TEMPORARY RESTRAINING ORDER ISSUED BY THE CUYAHOGA COUNTY COURT OF COMMON PLEAS.
 II. THE COURT WHICH PRESIDED OVER THE EAGLE MANAGEMENT AND RUSSIAN TEA ROOM LAWSUIT ACTED OUTSIDE OF ITS JURISDICTION WHEN IT IGNORED A CURRENT RESTRAINING ORDER ISSUED ON LIQUOR PERMIT NO. 7044455 BY ANOTHER COURT AND ORDERED THE RELEASE OF $20,000.00 TO EAGLE MANAGEMENT.
Because both assignments of error contest the order granting The Russian Tea Room's motion for summary judgment, we will address them together. We conclude that the trial court erred in awarding summary judgment to The Russian Tea Room.
Under Civ.R. 56(C), summary judgment is appropriate when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56(C). Lee v. Sunnyside Honda (1998), 128 Ohio App.3d 657, 660; N. Coast Cable L.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440.
In the case at bar, The Russian Tea Room first contends it was entitled to judgment as a matter of law based on R.C. 1303.35. That statute provides, in relevant part:
 (A) Except as stated in division (B) of this section, the right to enforce the obligation of a party to pay an instrument is subject to all of the following:
 * * * (3) A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument, but the claim of the obligor may be asserted against the transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.
 (B) The right of a holder in due course to enforce the obligation of a party to pay the instrument * * * is not subject * * * to claims in recoupment stated in division (A)(3) of this section against a person other than the holder.
The Russian Tea Room asserts that the Shakers' right to enforce The Russian Tea Room's obligation to pay the note is subject to The Russian Tea Room's claim in recoupment against Potopsky Enterprises, Inc. The Russian Tea Room insists that its claim in recoupment arose from its transaction with Potopsky Enterprises, Inc. But even if we were to accept that The Russian Tea Room could assert a claim in recoupment as a defense to a claim by Potopsky Enterprises, Inc., such an argument would not be a valid defense to the claim of the Shakers if they were a "holder in due course" under R.C. 1303.32.3.[3]
Consistent with its goal to promote the unrestrained transferability of negotiable instruments, R.C. Chapter 1303 confers certain rights and protections upon a holder in due course. Consequently, a holder in due course takes an instrument free from all claims and defenses with certain limited exceptions. See All American Finance Co. v. Pugh Shows, Inc. (1987), 30 Ohio St.3d 130,131. Under R.C. 1303.35(B), an obligor's claim in recoupment against a person other than the holder in due course is no defense to the claim of the holder in due course.
Thus in Star Bank Natl. Assn. v. Cirrocumulus Ltd. Partnership (1997), 121 Ohio App.3d 731, Cumulus Corporation sold its Memory Module Division plant to Cirrocumulus Limited Partnership, and Cirrocumulus gave Cumulus a promissory note. Cumulus assigned all of its rights, title and interest in the promissory note to Star Bank. When Cirrocumulus discovered problems arising from its transaction with Cumulus, Cirrocumulus stopped making payments on the promissory note. Star Bank sued Cirrocumulus to recover the balance due on the promissory note. Cirrocumulus denied that Star Bank was a holder in due course and additionally asserted claims for recoupment in defense. This court affirmed the jury's determination that Star Bank qualified for holder in due course status, such that Star Bank took the promissory note free of Cirrocumulus's alleged defenses, which it would have against Cumulus. Id. at 747. Specifically rejecting the argument that Cirrocumulus's recoupmentdefenses against Cumulus were defenses to Star Bank's claim on the promissory note, this court said:
 Star Bank being a holder in due course of the promissory note and having thus taken the note free of Cirrocumulus's defenses, any error regarding the defenses presented at trial would be harmless error. * * * Whether Cirrocumulus could or could not prove its defenses will not matter where Star Bank has been shown to be a holder in due course and, therefore, to have taken the promissory note free of the defenses it would have had against Cumulus.
Id. at 747.
Similarly, any recoupment defense The Russian Tea Room might have under R.C. 1303.35(A)(3) against anyone other than the Shakers arising from The Russian Tea Room's transaction with Potopsky Enterprises, Inc., is, by R.C. 1303.35(B), no defense to the claim of the Shakers if they meet holder in due course status. Because The Russian Tea Room does not dispute that the Shakers qualified for holder in due course status, it follows that The Russian Tea Room was not entitled to summary judgment against the Shakers pursuant to R.C. 1303.35(B).
The Russian Tea Room alternatively argued that there was no balance due on the promissory note because The Russian Tea Room incurred $23,087.20 in expenses to obtain the liquor permit, including the payment of $20,000 to Eagle Management Technologies, Inc., in Case No. 360939. Contending that those expenses represented payments of liens, taxes or encumbrances in order to complete the transfer, The Russian Tea Room says it could deduct all those payments from any balance due to the Shakers on the $20,000 promissory note pursuant to the note's terms. Because The Russian Tea Room's expenses exceeded the amount otherwise due on the note, The Russian Tea Room says it owes the Shakers nothing.
For their appeal, the Shakers assert that The Russian Tea Room's payment of $20,000 to Eagle Management in Case No. 360939 did not represent payment of a lien, tax or encumbrance necessary for The Russian Tea Room to obtain the liquor permit from Potopsky Enterprises, Inc. The Russian Tea Room insists that its payment to Eagle Management was payment of an encumbrance. The Russian Tea Room's argument is without merit.
An encumbrance is generally defined as a right or interest in land which may subsist in another to the diminution of the value of the land but which is consistent with the passing of the fee. See Alliance Towers, Ltd. v. Stark County Bd. of Revision (1988),37 Ohio St.3d 16, 22, n. 5; Tenbusch v. L. K. N. Realty Co. (1958),107 Ohio App. 133, 136. But even if we construed the term more generally to encompass an obstruction, a burden, a hindrance o [sic] to weigh down with claims or debts, as The Russian Tea Room suggests, we find nothing in the Eagle Management's proceedings against The Russian Tea Room in Case No. 360939 imposing such an obstruction, burden, or hindrance. That litigation involved Eagle Management's damages claim against The Russian Tea Room for allegedly interfering with Eagle Management's prior agreement with the Potopsky defendants. While the temporary restraining order in that case enjoined The Russian Tea Room from doing any act which would result in the transfer of liquor license number 7044455 from Potopsky Enterprises, Inc. to the [Russian Tea Room], neither that restraining order, which maintained the status quo, nor any of the other orders entered in Case No. 340951 or Case No. 360939, including the agreed judgment entry which settled Eagle Management's lawsuit against The Russian Tea Room, represented a legal precondition that had to be satisfied before the liquor permit could transfer lawfully.[4] Cf. Ross v. Franko (1942),139 Ohio St. 395 (lien is charge upon property to secure performance of obligation); Jordan v. James (1831), 5 Ohio 88 (lien on personal property is a right of detaining the property until such lien is satisfied). We therefore reject The Russian Tea Room's argument that an order preserving the status quo during litigation imposed a legal precondition which encumbered the liquor permit.
We likewise reject The Russian Tea Room's contention that its $20,000 payment to Eagle Management discharged its independent obligation to the Shakers as holders of the promissory note. We know of no authority under which the payment to someone other than the one entitled to enforce an instrument by itself extinguishes or otherwise discharges the obligation to pay the instrument. R.C.1303.67(A) provides:
 Subject to division (B) of this section, an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under section 1303.36 of the Revised Code by another person. (Emphasis added.)
A payment to anyone other than the legal holder or an authorized agent does not discharge the obligation to pay the instrument. See Hoffmaster v. Black (1908), 78 Ohio St. 1.
Moreover, a payment does not effectively discharge the obligation as to a holder in due course who acquires the instrument without notice of the discharge. R.C. 1303.66(B). See, also, Chappell v. Phillips (1833), 1 Wright 372 (payments made are no defense against bode fide endorsee without notice); Cleveland Dredge Dock Co. v. Smith (1909), 28 Ohio C.D. 629, affirmed (1911), 84 Ohio St. 482 (payment on notes without surrender or cancellation did not prevent recovery by an endorsee who acquires the instrument in due course without notice of payment); Allen v. Johnson(1900), 11 Ohio C.D. 42 (payment is no defense to action by transferee who acquired notes after payment but without notice).
We assuredly do not see how The Russian Tea Room's $20,000 payment to Eagle Management to settle Eagle Management's lawsuit against The Russian Tea Room relieved The Russian Tea Room of its earlier promise to pay $20,000 for agreeing to the transfer of the liquor permit from Potopsky Enterprises, Inc. And inasmuch as the Shakers acquired the note on November 24, 1997, any payment by The Russian Tea Room to Eagle Management on November 2, 1998 plainly could not discharge The Russian Tea Room's obligation to pay the note. We therefore conclude that The Russian Tea Room's payment of $20,000 to Eagle Management in Case No. 360939 did not discharge its obligation to pay the note. Nor did it represent the payment of a lien, tax or encumbrance which could be deducted under the terms of the November 1997 promissory note.
At oral argument, counsel for the Shakers acknowledged that some expenses incurred by The Russian Tea Room may legitimately be considered liens, taxes or encumbrances which could be deducted from the balance due on the promissory note. Whatever amount that may be, it plainly does not exceed the value of the note held by the Shakers so as to discharge The Russian Tea Room's obligation on the note held by the Shakers. We believe that is an issue better resolved on remand by the trial court.
Accordingly, we reverse the judgment and remand this matter for further proceedings.
It is, therefore, ordered that appellants recover of appellee their costs herein taxed.
It is ordered that a special mandate be sent to the court of common pleas to carry this judgment into execution.
 _____________________ KARPINSKI, J.
TERRENCE O'DONNELL, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] The application was filed with the Ohio Department of Liquor Control shortly thereafter.
[2] The docket to Case No. 340951 further reflects an order entered on December 18, 1997, which denied the motion for preliminary injunction and dismissed the temporary restraining order. On January 12, 1998, however, the court entered an order stating that its December 18, 1997 journal entry was in error. The January 12, 1998 order further indicated that a consent judgment entry was to be filed in this matter. That entry would ultimately be filed on January 21, 1998. See infra.
[3] The Shakers' motion for summary judgment, supported with evidentiary materials, contended that they qualified for holder in due course status. The Russian Tea Room did not dispute the Shakers' status in the court below and, during oral argument before us, accepted arguendo that the Shakers qualified for holder in due course status. The trial court ultimately overruled the Shakers' motion for summary judgment, but the Shakers have not assigned that as an error. We therefore express no opinion on whether the Shakers in fact qualify for holder in due course status. To decide whether the trial court correctly awarded summary judgment to The Russian Tea Room, however, we are obliged to construe the evidence and inferences most favorably to the Shakers. See Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485; Turner v. Turner (1993), 67 Ohio St.3d 337, 341. We therefore assume without deciding that the Shakers qualified for holder in due course status.
[4] Indeed, the facts of this case indicate that Potopsky Enterprises, Inc., transferred the liquor permit to The Russian Tea Room on October 1, 1998, before The Russian Tea Room paid Eagle Management $20,000 on November 2, 1998 and before Case No. 360939 was resolved by the December 1, 1998 agreed judgment entry.