SALTER, APPELLEE, *v.* MUTUAL FINANCE CO., APPELLANT, ET AL.
MURRAY, APPELLEE, *v.* MUTUAL FINANCE CO., APPELLANT, ET AL.

(Nos. 557 and 558—Decided February 4, 1957.)

*Mr. A. B. Crandall* and *Mr. E. R. Ostrander,* for appellee.
*Mr. R. O. Colgrove,* for appellants.

GRIFFITH, J. These are appeals on questions of law and fact. By agreement of counsel, the two cases were tried together, and it is upon the record there made together with the pleadings and stipulations that this case is submitted to this court.

The facts of the two cases are so similar, following the same general pattern of events, that we shall dispose of the *Salter case* in this opinion and, by so doing, it will be a disposition of the two cases.

Raymond J. Salter is seeking a judgment of this court declaring as to the respective rights and liabilities of the parties to this action in respect to a note dated September 12, 1952, in the amount of $1,400.88, and praying that the court declare the note to be void and enjoin the defendant Mutual Finance Company and the defendant H. B. Densmore from reducing the note to judgment.

Among other things, the plaintiff, in his amended petition, alleges that the note was never intended to be a negotiable instrument; that it was blank, excepting as to his signature, when it was delivered to the Finance Company; and that the Finance Company then prepared the note by filling in the blanks thereon

setting up a fictitious transaction between the plaintiff, Salter, and the defendant Densmore.

The defendant Densmore filed no answer and made no defense at the trial, so the charges as against him are established. As to the defendant Mutual Finance Company, it filed an answer in the nature of a general denial, and thus the issues are joined between Salter and the Mutual Finance Company.

H. B. Densmore was a used car dealer in Painesville. On September 12, 1952, Salter, a prospective purchaser of a convertible automobile, interviewed Densmore and Densmore permitted Salter to use a 1951 Plymouth Coupe until he could acquire a convertible himself.

At the time in question, Densmore induced Salter to sign in blank a promissory note, a chattel mortgage, and a purchaser's financial statement so that in the event Salter should have an accident with the 1951 Plymouth, there would be insurance coverage.

There is evidence that at the time Salter signed these instruments there was an agreement between Salter and Densmore that the instruments were to be used only in event the automobile was damaged by fire or collision, so that Salter's insurance policy could be invoked while the car was in Salter's possession; and that Salter signed the instruments for this purpose only.

Salter retained possession of the 1951 Plymouth only 18 days, or until October 1, 1952, when he returned the car to Densmore and purchased a convertible elsewhere.

In the early part of 1953, Salter received a written notice from the Mutual Finance Company that his application for a loan had been approved. He immediately took the notice to Densmore and was informed by Densmore, ''I'll take care of it. It is a mistake.''

The finance company again, in May 1953, notified Salter that his account was in default. He promptly went to the company's office and was then informed that they were in possession of a note secured by a chattel mortgage on a 1951 Plymouth Coupe.

The record reveals that Densmore, without authority and without any knowledge on the part of Salter, took the mortgage

and note and financial statement and application for insurance to the finance company, and that, at the time of delivery, these papers were all blank in every respect except as to the signature of Raymond J. Salter, and as to one single notation on the upper right hand corner of the purchaser's financial statement; and that the finance company, in its own office, filled in the note and the mortgage from figures it obtained either from the figures on the financial statement or from figures given to it by Densmore.

That this whole transaction was fictitious, was admitted on the stand by Densmore. Salter never at any time purchased this car (a 1951 Plymouth) from Densmore. The certificate of title which Densmore delivered to the finance company was, by the finance company, returned not to Salter but to Densmore.

In this case we are concerned with the rights and obligations of the parties on the note. Section 1301.16, Revised Code, provides:

"When the instrument is wanting in any material particular, the person in possession thereof has a prima-facie authority to complete it by filling up the blanks therein. A signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima-facie authority to fill it up as such for any amount. In order that such an instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. If such an instrument after completion is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

The finance company was a party to this transaction before the notes were complete. It filled in the blanks, apparently relying on Densmore and on his notes in the corner of the financial statement. Densmore's only authority was to use the papers in event of an accident to the car while it was in Salter's possession.

Clearly, the finance company is not a holder in due course.

What constitutes a holder in due course? Section 1301.54, Revised Code, reads in part as follows:

"A holder in due course is one who has taken the instrument under the following conditions:

"(A) That it is complete and regular on its face;

"* * * "

The inescapable conclusion must be that the finance company took the notes subject to any infirmities, and any defense that Salter may have as against the payee, Densmore, since they were not complete and regular on their face at the time of delivery to the finance company.

We, therefore, find in favor of the plaintiff Salter and in favor of the plaintiff Murray, and against the defendants, Mutual Finance Company and W. F. Densmore, and we find that, as to the Salter note and the Murray note, each is void as to Salter and Murray, and the defendants are permanently restrained from reducing those notes to judgment.

*Judgments for plaintiffs.*

NICHOLS, P. J., and PHILLIPS, J., concur.