ARCANUM NATIONAL BANK, APPELLEE, *v.*
HESSLER, APPELLANT.

[Cite as Arcanum National Bank v. Hessler (1982),
69 Ohio St. 2d 549.]

(No. 81-751—Decided March 3, 1982.)

*Mr. Herbert W. Cox,* for appellee.

*Swinehart & Princi Co., L.P.A., Mr. Howard E. Swinehart* and *Ms. Michelle J. Gearhardt,* for appellant.

KRUPANSKY, J.   The sole issue in this case is whether appellee is a holder in due course who takes the note free from appellant's defense of want of consideration.

In a suit by the holder of a note against the maker, the holder obtains a great advantage if granted the status of holder in due course. R. C. Chapter 1303 (Article 3, U.C.C.) provides that a holder in due course takes the instrument free from most defenses and claims.[1] One such defense which is of no avail when raised against a holder in due course is want of consideration, the defense raised by appellant.

Whether one is a holder in due course is an issue which does not arise unless it is shown a defense exists. Once it is established a defense exists, the holder has the full burden of proving holder in due course status in all respects.[2]

---

[1] R. C. 1303.34 (UCC 3-305) provides:

"To the extent that a holder is a holder in due course he takes the instrument free from:

"(A) all claims to it on the part of any person; and

"(B) all defenses of any party to the instrument with whom the holder has not dealt except:

"(1) infancy, to the extent that it is a defense to a simple contract; and

"(2) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

"(3) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

"(4) discharge in insolvency proceedings; and

"(5) any other discharge of which the holder has notice when he takes the instrument."

[2] R. C. 1303.36(C) (UCC 3-307[C] ), provides:

There are five requirements which, under R. C. 1303.31 (UCC 3-302),[3] one must meet in order to establish holder in due course status: viz., (1) one must be a "holder" as defined in R. C. 1301.01(T) (UCC 1-201); (2) one must be in possession of an "instrument," as explained in R. C. 1303.01(A)(5) (UCC 3-102[A] [5]; (3) "value," as set forth in R. C. 1303.32 (UCC 3-303), must have been given for the instrument; (4) the instrument must have been taken in "good faith," as defined at R. C. 1301.01(S) (UCC 1-201); and (5) the purchaser must take the instrument without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person, as detailed at R. C. 1303.33 (UCC 3-304). All five of these requirements must be met to qualify as a holder in due course. A transferee who otherwise qualifies as a holder in due course, but who takes an instrument with notice of a defense to it on the part of any person is therefore not a holder in due course. Likewise, one who does not take an instrument in good faith is not a holder in due course.

## I.

Appellant contends appellee has not established holder in due course status because appellee took the instrument with notice of a defense against it. We agree.

The requirement that the purchaser take the instrument without notice of a claim or defense in order to qualify as a holder in due course is explained, under the heading of "Notice to Purchaser," at R. C. 1303.33 (UCC 3-304), which provides in relevant part:

"(A) The purchaser has notice of a claim or defense if:

"(1) The instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms, or ownership or to create an ambiguity as to the party to pay."

"After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."

[3] R. C. 1303.31(A) (UCC 3-302[A] ) sets forth the basic requirements:

"A holder in due course is a holder who takes the instrument:

"(1) for value; and

"(2) in good faith; and

"(3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

Whether a transferee has taken an instrument with notice of a defense depends upon all the facts and circumstances of a particular situation and is generally a question of fact to be determined by the trier of fact. *Rood* v. *McCann* (1957), 103 Ohio App. 55; *Wakem* v. *Leroy* (1928), 33 Ohio App. 265; *Hamilton* v. *The Ohio Contract Purchase Co.* (1926), 23 Ohio App. 445. One situation when a bank was denied holder in due course status was found in *First National Bank of Linton* v. *Otto Huber and Sons, Inc.* (D. C. S. D. 1975), 394 F. Supp. 1284. This case held the bank had notice of a defense because of an ambiguity involving the due date; the note was considered irregular on its face. Similarly, when a transferee receives a note which is blank except for the maker's signature, the note is irregular on its face. The transferee takes with notice of a defense and is therefore not a holder in due course of the note. *Salter* v. *Mutual Finance Co.* (1957), 106 Ohio App. 20.

In the case *sub judice,* the trial court, sitting as fact finder, weighed the evidence of the relationship between appellee and appellant and reasoned: "The defect on the promissory note is that the signature of Carla Hessler was added by Kenneth Hessler and, since the Arcanum National Bank handled the Hesslers' personal finances,[4] it should have noticed that there was a defect on the face of the instrument. * * * The note also bears the initials 'K.H.' indicating that Kenneth Hessler had signed Carla Hessler's name." Accordingly, the trial court specifically found "this 'irregularity' does call into question the validity of the note, the terms of the note, the ownership of the note or create an ambiguity as to the party who is to pay the note." Thus, the trial court, while specifically finding appellee took the note with notice of a defense, nonetheless erroneously held appellee bank qualified as a holder in due course.

We hold, therefore, when the trier of fact finds a transferee took a note with notice of a defense, the legal conclusion which follows from such finding is the transferee cannot benefit from holder in due course status[5] and the maker

---

[4] The record indicates appellee had a signature card on Mr. and Mrs. Hessler, and that Carla Hessler is left-handed and Kenneth Kessler is right-handed.

[5] This is assuming the evidence is sufficient to support the finding of fact. The sufficiency of the evidence was not raised with respect to this issue.

may assert all valid defenses. Since the fact finder in this case specifically found appellee bank took the note with notice of a defense, appellee cannot qualify as a holder in due course.

## II.

Appellant also contends, in essence, appellee bank failed in its burden of proving holder in due course status because appellee failed to establish it took the note in good faith as required under R. C. 1303.31(A)(2) [UCC 3-302(A)(2) ].

"Good faith" is defined as "honesty in fact in the conduct or transaction concerned." R. C. 1301.01(S) [UCC 1-201(19) ]. Under the "close connectedness" doctrine, which was established by the Supreme Court of New Jersey in *Unico* v. *Owen* (1967), 50 N.J. 101, 232 A. 2d 405, a transferee does not take an instrument in good faith when the transferee is so closely connected with the transferor that the transferee may be charged with knowledge of an infirmity in the underlying transaction. The rationale for the close connectedness doctrine was enunciated in *Unico,* at pages 109-110, as follows:

"In the field of negotiable instruments, good faith is a broad concept. The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not sound as its face would indicate. It would seem to follow, therefore, that the more the holder knows about the underlying transaction, and particularly the more he controls or participates or becomes involved in it, the less he fits the role of a good faith purchaser for value; the closer his relationship to the underlying agreement which is the source of the note, the less need there is for giving him the tension-free rights considered necessary in a fast-moving, credit-extending world."

Soon after the decision in *Unico* was reached, the close connectedness doctrine was adopted by Ohio courts. Headnote No. 2 in *American Plan Corp.* v. *Woods* (1968), 16 Ohio App. 2d 1, announced the following:

"A transferee of a negotiable note does not take in 'good faith' and is not a holder in due course of a note given in the sale of consumer goods where the transferee is a finance company involved with the seller of the goods, and which has a per-

vasive knowledge of factors relating to the terms of the sale."

Similarly, in *Security Central Nat'l Bank* v. *Williams* (1976), 52 Ohio App. 2d 175, a finding that the transferee did not take the note in good faith was justified when the transferee-bank was alerted to the possibility that the underlying transaction which generated the note was not a completely above-board transaction.

According to White and Summers, noted authorities on the Uniform Commercial Code, the following five factors are indicative of a close connection between the transferee and transferor:

(1) Drafting by the transferee of forms for the transferor; (2) approval or establishment or both of the transferor's procedures by the transferee (*e.g.,* setting the interest rate, approval of a referral sales plan); (3) an independent check by the transferee on the credit of the debtor or some other direct contact between the transferee and the debtor; (4) heavy reliance by the transferor upon the transferee (*e.g.,* transfer by the transferor of all or substantial part of his paper to the transferee) and; (5) common or connected ownership or management of the transferor and transferee. *White & Summers, Uniform Commercial Code* 481 (1972).

An analysis of the above factors in relation to the facts of this case, as set forth in the trial court's findings, reveals an unusually close relationship between appellee bank (the transferee), the John Smith Grain Company (the transferor-payee) and J & J Farms, Inc.

Appellee provided John Smith Grain Company with the forms used in the transaction and supplied the interest rate to be charged. At the time of the purchase of the first note, appellee bank ran an independent credit check on appellant. There is evidence of a heavy reliance by John Smith Grain Company upon appellee bank insofar as it was customary for the grain company to transfer substantially all of its commercial paper to appellee bank. There was not only a common director of appellee and John Smith Grain Company, but also common directors or management between John Smith Grain Company and J & J Farms, Inc. H. K. Smith was a director of appellee bank and the president and director of John Smith Grain Company. C. North, Jr., was an officer and director of

both John Smith Grain Company and J & J Farms, Inc. John Milton Smith was officer and director of John Smith Grain Company and officer of J & J Farms, Inc. In addition, the trial court found that B. Henninger, the executive vice-president of appellee who had previously been employed by John Smith Grain Company, frequented John Smith Grain Company several times a week between November 1976 and January 1977 to advise the officers of John Smith Grain Company on business practices. During that time, John Smith Grain Company was experiencing serious financial difficulties.

The facts of this case clearly indicate such close connectedness between appellee bank and John Smith Grain Company as to impute knowledge by appellee bank of infirmities in the underlying transaction. The trial court specifically found, in its separate findings of fact and conclusions of law, the relationship between appellee bank and J & J Farms was not an arm's length relationship. In spite of this finding, the trial court erroneously concluded "the facts do not permit the court to void the holder in due course protections under these circumstances."

The trial court reasoned as follows: "Even if the bank were aware, through its Director, Tim [H. K.] Smith, of the perilous financial condition of John Smith Grain Company, the bank had every right to anticipate that the note could be paid by J & J Farms when the pigs were sold." Given the circumstances of this case, *i.e.*, the common directors or management between appellee bank, John Smith Grain Company and J & J Farms, Inc., the trial court as fact finder could quite reasonably conclude appellee was aware, at the time it bought the note, of the troubled financial situation of John Smith Grain Company.

The trial court, however, missed the point. Not only do the facts indicate appellee bank was aware of the impending bankruptcy of John Smith Grain Company, but they also show appellee had reason to know of a fatal infirmity in the underlying transaction, viz., there was no consideration given by John Smith Grain Company for the note. C. North, Jr., an officer and director of both John Smith Grain Company and J & J Farms, Inc., obtained appellant's signature and advised appellant to sign his wife's name on the note. As an officer and

director of J & J Farms, Inc., C. North, Jr., undoubtedly was aware that at the time he obtained appellant's signature, the hogs had already been mortgaged by J & J Farms, Inc. It is well-established in Ohio a corporation can act only through its officer and agents, and the knowledge of the officers of a corporation is at once the knowledge of the corporation. *The First Nat'l Bank of New Bremen* v. *Burns* (1913), 88 Ohio St. 434. If North, as officer and director of both John Smith Grain Company and J & J Farms, Inc., knew there was no consideration for the note, then such knowledge is imputed to both corporations. Thus, H. K. Smith, as president and director of John Smith Grain Company, had ample reason to know of the failure of consideration; and since H. K. Smith was also a director of appellee bank, his knowledge is imputed to appellee bank.

The executive vice-president of appellee bank, B. Henninger, who had previously been employed by John Smith Grain Company, was also in close contact with John Smith Grain Company at the time appellant signed the note. According to the trial court's conclusions, at the time appellant's signature was obtained on the note, B. Henninger was meeting several times a week with the officers of John Smith Grain Company to advise them on business practices. At that time, the officers of John Smith Grain Company included H. K. Smith, who was also a director of appellee bank, and C. North, Jr., who was also an officer and director of J & J Farms, Inc.

Given these facts, one cannot conclude with absolute certainty that appellee bank had actual knowledge of the failure of consideration. As appellant correctly states in his brief, however, the doctrine of close connectedness was developed in part because of the difficulty of proving the transferee's actual knowledge of problems in the underlying transaction. The doctrine allows the court to imply knowledge by the transferee when the relationship between the transferee and transferor is sufficiently close to warrant such an implication.

Under the circumstances of this case, we find the relationship between appellee bank and John Smith Grain Company was so entwined that it was error for the trial court not to

apply the doctrine of close connectedness to find appellee bank failed to carry its burden of proving good faith.

If we accept the trial court's findings of fact and apply the close connectedness doctrine, we can reach only one conclusion, viz., appellee bank did not take the note in good faith.

Upon either one or both of the above reasoned theories, *i.e.,* (1) notice of a defense and (2) close connectedness doctrine, we find the Court of Appeals erred in affirming the trial court's finding that appellee bank was a holder in due course. The judgment of the Court of Appeals is, therefore reversed.

*Judgment reversed.*

SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

W. BROWN, J., concurs in paragraphs one and two of the syllabus and the judgment.

CELEBREZZE, C. J., concurs in the judgment only.

WILLIAM B. BROWN, J., concurring. I concur in paragraphs one and two of the syllabus and in the judgment. I agree with the majority's finding, and the rationale in support thereof, that " * * * when the trier of fact finds a transferee took a note with notice of a defense, the legal conclusion which follows from such finding is the transferee cannot benefit from holder in due course status and the maker may assert all valid defenses." (Footnote omitted.)

This court's finding that appellee bank cannot qualify as a holder in due course since it took the note with notice of a defense is, in my opinion, dispositive of the case at bar. As such, it is unnecessary for this court to additionally determine whether appellee failed to qualify as a holder in due course under the close connectedness doctrine.