OPINION
These appeals arise from approximately twenty-two separate actions in foreclosure. Defendants/appellants, Harry H. Wagner, et al., appeal from a decision of the Allen County Court of Common Pleas granting summary judgments in favor of plaintiffs/appellees, IMC Mortgage Company and other institutions similarly situated. For the reasons that follow, we affirm the decision of the trial court.
The pertinent facts and procedural history of the case are as follows: Harry H. Wagner ("Wagner") is the president of Harry H. Wagner Son, Inc. ("Wagner Son"), a residential and commercial construction company located in Lima, Ohio. Wagner is in business with his son Chad and his daughter Dawn. Wagner has worked for the company, which was founded by his father, for thirty-one years. In the past 20 years, Wagner Son has built approximately 156 duplex units, which it owns and leases as residential rental property. The properties had been financed through local banks at interest rates of 8.0%, adjustable in small increments every three to five years. Wagner had no difficulty paying these loans.
For estate planning purposes, Wagner sought to refinance the rental properties. He approached the American Heritage Mortgage Company of Ohio, a Columbus-based mortgage company, for assistance in securing refinancing for the 156 duplex units. Wagner hoped to secure a fixed interest rate of seven to eight percent to increase the properties' long-term profitability. Lawrence Auls, a representative of American Heritage, identified the AMC Bank as an interested lender that could provide a financing package which could include all of the Wagner Son loans.
Wagner and Auls met with James Koenig, who was president of the wholesale lending division of Discovery Mortgage Company, known as AMC Bank. Mr. Koenig traveled from California to Lima to inspect the Wagner properties and to discuss the proposed loan. Koenig advised Wagner that AMC would be unable to provide a loan under the terms proposed by Wagner. Due to the uncertainty of the market value of real estate in Lima, AMC could only provide a loan at 10.9% and the loans would need time to "season." The possibility of whether Wagner could refinance at a fixed annual interest rate between seven and eight percent with a thirty year amortization was discussed.
On February 10, 1997, Wagner closed on the loans with AMC. Wagner executed approximately 60 notes on loans totaling $11 million at an annual interest rate of 10.9% per annum. Thereafter, AMC sold the mortgage notes on the secondary market, pursuant to the terms of the notes and mortgages. The loans were subsequently assigned to the appellee herein, and other appellees similarly situated.
The appellants' properties failed to generate the income necessary to support the note payments and they defaulted on the payments. The appellees declared the debts due and the instant foreclosure proceedings were initiated. The foreclosures were consolidated.
Wagner's answers asserted claims and defenses which included fraud, misrepresentation, promissory estoppel, and breach of contract. The plaintiffs in each action filed motions for summary judgment which Wagner opposed. On January 3, 2001, the trial court granted the summary judgment motions. The appellant now appeals, asserting the following seven assignments of error for our review:
1. The lower court erred in determining that there was no material issue of fact with regard to appellants' claim of negligent misrepresentation.
2. The lower court erred in determining that there was no issue of fact with regard to appellants' claim of fraud.
3. The lower court erred in determining that there was no issue of fact with regard to appellants' claim of promissory estoppel.
4. The lower court erred in determining that there was no issue of fact with regard to appellants' breach of contract claim.
5. The lower court erred in determining that there was no issue of fact with regard to appellants' claim of breach of the duty of good faith.
6. The lower court erred in determining that the parole evidence rule bars appellants' claims and defenses.
7. The lower court erred in determining that there was no genuine issue of material fact as to whether appellees are holders in due course.
Our task is to determine whether the appellants have any viable defenses. If so, we must then ascertain whether the appellee herein and the other similarly situated appellees are holders in due course.[1]
Where the holder of a note files suit against the maker, the holder obtains the advantage if granted the status of a holder in due course.[2]
R.C. Chapter 1303 provides that a holder in due course takes the instrument free of most claims and defenses.[3]
 Standard of Review
In considering an appeal from the granting of summary judgment, we review the grant of the motion independently and do not give deference to the trial court's determination.[4] Accordingly, we review the motionde novo and apply the same standard for summary judgment as did the trial court.[5]
Looking at the evidence as a whole, summary judgment is proper when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.[6] To make this showing, the initial burden lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.[7] Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action.[8] Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial.[9]
For purposes of clarity and brevity, we will address the appellants' first, second, third, fourth and sixth assignments of error together.
A. The Parol Evidence Rule
The pivotal issue in this appeal is whether the appellants' claims are barred by the parol evidence rule. In their sixth assignment of error, the appellants assert that the trial court erred when it found that their claims were barred by the parol evidence rule. We address this assignment of error first, because assignments of error one through four pertain to alleged oral representations which are not reflected within the terms of the final written agreement. Our decision with regard to parol evidence defines the limits of the contract and the terms that we may consider when deciding the validity of Wagner's claims regarding negligent misrepresentation, fraud, promissory estoppel, and breach of contract.
A rule of substantive law, the parole evidence rule is designed to protect the integrity of final, written agreements.[10] In general, the parol evidence rule states that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements."[11] The parol evidence rule excludes extrinsic evidence "because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself."[12] "If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court."[13]
In the present case, the appellants wish to enter evidence of an alleged conversation wherein Koenig assured Wagner that he would be able to refinance the loan within twelve months of the date the promissory notes were executed down to an annual percentage rate of seven to eight percent. The final written agreements, however, do not contain a provision guaranteeing refinancing in six to twelve months at a lower rate.
The appellants do not challenge the integrity of the notes as a final integration of the terms of the lending agreement. Rather, the appellants explicitly maintain that Koenig's oral representation to Wagner created a contract that is purely collateral, distinct and independent of the written contract. We disagree. An oral promise "cannot be enforced in preference to a signed writing which pertains to the same subject matter."[14] The alleged promise, to reduce the interest rate from 10.9 percent to seven or eight percent, is not separate, distinct, or independent of the final written agreement. The substance of the alleged oral promise is clearly within the scope of the integrated agreements. The terms of the alleged oral promise are terms which, if they existed, would have been incorporated into the promissory notes. In such a situation, the parol evidence rule prevents the appellants from presenting evidence which tends to contradict the terms of the promissory notes.
The appellants contend that AMC induced them to enter into the notes and mortgages at issue by promising that refinancing would be provided within twelve months. While some cases have allowed for an exception to the general rule to permit the introduction of contemporaneous oral representations when fraud is alleged, fraud may not be proven by alleging that inducement to enter into the contract was within the scope of the integrated agreement, yet was ultimately not included in it.[15]
"The claim for fraud must be premised on matters extrinsic to the written contract."[16] As stated by Chief Justice Taft:
 A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs.[17]
For the foregoing reasons, we find that the trial court properly determined that the parol evidence rule excludes the evidence upon which the appellants' negligent misrepresentation, fraudulent inducement, promissory estoppel, and breach of contract claims rest. The appellants' first, second, third, fourth, and sixth assignments of error are overruled.
B. The Duty of Good Faith
In their fifth assignment of error, the appellants contend that AMC breached its duty of good faith and fair dealing and relies on R.C. 1301.09
in making this claim. R.C. 1301.09 states, in pertinent part, that "[e]very contract or duty within Chapters 1301, et seq. of the Revised Code imposes an obligation of good faith in its performance or enforcement." The appellants maintain that AMC's misrepresentations for the purpose of inducing the appellants to enter into a loan agreement at a higher interest rate leaves little doubt as to an issue of fact regarding breach of the duty of good faith and fair dealing.
In Oehrtman v. Third Natl. Bank Trust Co.,[18] a case relied upon by the appellants, the defendant bank made oral and written representations to the plaintiffs-debtors which it failed to uphold. The bank represented, in a letter to Mr. Oehrtman, that upon his remittance of an arrearage legal action would cease.[19] After the bank received a check for the arrearage, the bank dismissed the suit as to Mr. Oehrtman, but obtained a default judgment against Mrs. Oehrtman for the balance of the mortgage note.[20] This court sustained the Oehrtman's claims and defenses against the lender for breach of the implied obligation of good faith.[21]
In the case at bar, the alleged representations made by Koenig were never reduced to writing, and the documents contradict Koenig's alleged oral representations. According to the signed documents, AMC's only task was to fund the loans to the appellants. Wagner was aware of the terms within the promissory notes when he signed them and was under no obligation to sign the notes if the terms were not what they had agreed upon. The appellants defaulted on their loan payments and the appellees filed suit to enforce the written contracts. A lender's decision to enforce the terms of a written agreement cannot be considered to be acting in bad faith.[22] The terms of good faith and fair dealing have been met. Therefore, the appellants fifth assignment of error is overruled.
C. Holder in Due Course
The trial court held that all of the appellees were holders in due course as a matter of law. In their seventh assignment of error, the appellants submit that the trial court's conclusion was in error.
Citing Hesler, the appellants correctly assert that once the maker of a note establishes that a claim or defense exists, a holder has the full burden of proving holder in due course status in all respects.[23] In the present case, the appellants have not established that a claim or defense exists. Therefore, the holders have no burden to prove holder in due course status. Accordingly, the appellants' seventh assignment of error is dismissed.
 Conclusion
We find that the trial court properly ruled that no genuine issue of material fact remains to be litigated. When looking at the evidence in the light most favorable to the appellants, the nonmoving parties, the appellees, as a matter of law, were entitled to summary judgment. For all of the foregoing reasons, the trial court's judgment entries granting summary judgment are affirmed.
Judgments affirmed.
WALTERS, P.J., concurs.
SHAW, J., concurs in judgment only.
[1] R.C. 1303.32 (UCC 3-302) provides:
 "`[H]older in due course' means the holder of an instrument if * * *
 (2) the holder took the instrument under all of the following circumstances:
(a) For value;
(b) In good faith;
 (c) Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;
* * *
 (f) Without notice that any party has a defense or claim in recoupment described in division (A) of section 1303.35 of the Revised Code.
[2] Arcanum Nat. Bank v. Hessler (1982), 69 Ohio St.2d 204.
[3] Id. See, also, R.C. 1303.35 (UCC 3-305).
[4] Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
[5] Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8.
[6] Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 686-687.
[7] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[8] Civ.R. 56(C).
[9] Dresher, 75 Ohio St.3d at 293.
[10] Charles A. Burton, Inc. v. Durkee (1952),158 Ohio St. 313.
[11] Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4.
[12] Id., quoting In re Gaines' Estate (1940), 15 Cal.2d 255,264.
[13] Bollinger v. Mayerson (1996), 116 Ohio App.3d 702, 712, citingDurkee, 158 Ohio St. at paragraph two of the syllabus.
[14] Mariam Prod. Credit Assn. v. Cochran (1988),40 Ohio St.3d 265.
[15] Bollinger, 116 Ohio App.3d 712; Wall v. Firelands Radiology, Inc. (1995), 106 Ohio App.3d 313.
[16] Id.
[17] Dice v. Akron, Canton Youngstown RR. Co. (1951), 155 Ohio St. 185,191, reversed on other grounds, (1959) 342 U.S. 359.
[18] (1988), 61 Ohio App.3d 604.
[19] Id.
[20] Id.
[21] Id.
[22] Ed Schory Sons v. Soc. Natl. (1996), 75 Ohio St.3d 433,443.
[23] Hesler, 69 Ohio St.2d 549, 551.