OPINION
{¶ 1} Appellants, William A. Isaak, Lola J. Isaak, Edmond M. Gray, and Judith Gray, on behalf of themselves and other persons similarly situated, appeal from the September 27, 2002 judgment entry of the Trumbull County Court of Common Pleas, granting appellee's, Trumbull Savings and Loan Company, cross motion for summary judgment and denying appellants' motion for partial summary judgment.
 {¶ 2} On January 13, 1998, appellants filed a class action complaint against appellee alleging six counts: (1) breach of contract against Ponderosa and the Landing and therefore appellee; (2) breach of contract, duty of good faith and fair dealing against the Campgrounds and therefore appellee; (3) fraudulent concealment against the Campgrounds and therefore appellee; (4) civil conspiracy against appellee; (5) fraudulent concealment against appellee; and (6) breach of contract, duty of good faith and fair dealing against appellee.
 {¶ 3} On April 15, 1999, appellants filed a motion for partial summary judgment on counts one, two, and three, pursuant to Civ.R. 56. On June 11, 1999, the trial court ordered that the instant action be maintained as a class action pursuant to Civ.R. 23. On July 7, 1999, appellee filed an appeal with this court based on the June 11, 1999 order granting class certification, which we reversed and remanded in August 2000.[1] On September 27, 2000, appellants filed a renewed motion for class certification, and appellee filed an opposition on November 30, 2000. On January 16, 2001, the trial court granted appellants' motion for class certification. Appellee filed a cross motion for summary judgment on August 31, 2001.
 {¶ 4} The facts of the case are as follows: in May 1993, appellants filed a federal case, Case No. 4-93-CV-1121, in the Northern District of Ohio, Eastern Division. Appellants alleged breach of contract and Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, as well as state law claims which were included as pendent causes of action. Appellants' claims arose out of their January 1987 purchase of interests in two campground resorts, Ponderosa Park in Salem, Ohio and The Landing in North Lawrence, Ohio ("Resorts"). Appellants sought recovery of money paid pursuant to a contract with the Resorts' principal owners, the LiVorio-Sabatini Group ("Group"), for the purchase of 1/750th interests in the Resorts which was financed by appellee.[2] Appellants specifically alleged that appellee engaged in a civil conspiracy with the Resorts' developers, aided and abetted the developers, and committed fraud and racketeering under RICO provisions.
 {¶ 5} The federal district court ultimately entered summary judgment dismissing the federal claims with prejudice and dismissing without prejudice the state law based Federal Trade Commission ("FTC") Holder claims for lack of pendent jurisdiction. Appellants appealed that decision to the Sixth Circuit Court of Appeals, Case No. 97-4347. While the Sixth Circuit appeal was pending, appellants filed an action in Trumbull County Court of Common Pleas, Case No. 98 CV 67, which later granted appellee's cross motion for summary judgment. On March 2, 1999, the Sixth Circuit upheld the dismissal of appellants' claims and held that appellants' contract, which was allegedly breached, was a contract for the purchase of real estate rather than for consumer goods and services.[3] As such, the Sixth Circuit reasoned that the FTC Holder Provision was not applicable and that appellants' federal claims were time barred.[4]
 {¶ 6} From its inception in 1985 through 1988, the Resorts developers constructed roads, restaurants, security gates, recreation buildings, and indoor swimming pools, as well as made improvements which included underground utilities and sewage treatment facilities. Appellants were invited through the use of the wires or mails to tour the Resorts and purchased an interest in the campgrounds by executing a form contract entitled "AGREEMENT FOR DEED."[5] In addition, appellants agreed to obtain installment loan financing through appellee.
 {¶ 7} The "AGREEMENT FOR DEED" set forth with specificity a detailed metes and bounds description of the property and stated in pertinent part:
 {¶ 8} "Upon the payment of the total purchase price and full compliance with all terms and conditions contained in this Agreement and the Note, the Seller will execute and deliver to the Purchaser a Warranty Deed conveying title to the premises * * *. * * * The parties recognize that the Seller has taken the property interest covered by this Agreement off the real estate market, has turned away prospective purchasers, and has incurred and will continue to incur development and other expenses in connection with the sale of this interest. * * * No action may be brought by either party more than one year after the date of the last payment. * * * The Purchaser further understands and agrees that this purchase is on an `under development basis' and that the use of the fully developed campgrounds is not guaranteed until [the Resorts] is fully developed. * * * This Agreement contains all of the Agreements of the parties and no representation, oral or otherwise, shall be binding on the parties hereto."
 {¶ 9} Appellants' contractual relationships with appellee were limited solely to the promissory notes in which they promised to make eighty-four monthly payments to appellee as repayment for the funds advanced to them by appellee in order to allow appellants to make their purchases with the Resorts.[6] Because they became disenchanted with the campgrounds, Appellants Edmond and Judith Gray abandoned their interest in the Resorts a few months after their purchase, and Appellants William and Lola Isaak abandoned their interest in August 1988.
 {¶ 10} Pursuant to the September 27, 2002 judgment entry, the trial court denied appellants' motion for partial summary judgment and granted appellee's cross motion for summary judgment. It is from that judgment that appellants filed a timely notice of appeal on October 8, 2002, and make the following assignments of error:
 {¶ 11} "[1.] The trial court legally erred in holding that borrowers could not rely on the principles of collateral or judicial estoppel in entering summary judgment on counts I-III of the complaint.
 {¶ 12} "[2.] The trial court legally erred in entering a [Civ.R. 56] judgment on counts I-III by failing to apply the proper legal rule under Ohio law in determining whether the transactions constituted the conveyance of real estate or the sale of consumer services and by failing to allow the remedy of reformation.
 {¶ 13} "[3.] Alternatively, the trial court erred in entering summary judgment on counts I-III based upon the holding that the close connection doctrine does not apply to allow the assertion of affirmative claims."
 {¶ 14} In their first assignment of error, appellants argue that the trial court erred in holding that they could not rely on the principles of collateral or judicial estoppel. Appellants stress that a federal court's factual determination under Fed.R.Civ.P. 56 will collaterally and judicially estop the relitigation of the same issue in an Ohio state court proceeding if the requirements of these doctrines are satisfied.
 {¶ 15} Fed.R.Civ.P. 56(C) states, in pertinent part, that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 16} Fed.R.Civ.P. 56(E) provides, in pertinent part:
 {¶ 17} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."
 {¶ 18} "Collateral estoppel, an aspect of res judicata, prevents a question that has been actually and necessarily determined by a court of competent jurisdiction in a first cause of action from being relitigated between the same parties or their privies in a second, different cause of action."[7]
 {¶ 19} "The doctrine of judicial estoppel prevents a litigant who has successfully taken a position in one action from taking a contradictory position in a subsequent action."[8]
 {¶ 20} Based on Brookpark, Ft. Frye, and Stanley, supra, an issue must be actually litigated and necessarily decided in a prior action in order for collateral or judicial estoppel to apply. In the case at bar, appellants have alleged for numerous years that the developers of the Resorts engaged in a predetermined scheme to loot their businesses and file bankruptcy. However, appellants have never submitted any proof or substantial evidence to support their allegations, as the record does not substantiate their claim. The trial court properly determined that the only issue before the Sixth Circuit was whether appellants knew or should have known that their property interests were damaged more than four years before their complaints were filed. There is no evidence indicating that the existence or non-existence of a bust-out scheme was ever litigated. Therefore, the doctrines of collateral or judicial estoppel do not apply. Thus, appellants' first assignment of error is without merit.
 {¶ 21} In their second assignment of error, appellants contend that the trial court erred by dismissing counts one through three pursuant to Civ.R. 56 because it failed to apply the proper legal rule under Ohio law for determining whether the transactions constituted the conveyance of real estate or the sale of consumer services. Appellants stress that since the transactions at issue constitute a consumer transaction, the FTC Holder Provision applies.
 {¶ 22} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 23} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."[9]
 {¶ 24} The Supreme Court of Ohio has stated:
 {¶ 25} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, andidentifying those portions of the record which demonstrate theabsence of a genuine issue of fact on a material element of thenonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case."[10]
 {¶ 26} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate.[11] Appellate courts review a trial court's granting of summary judgment de novo.[12] TheBrown Court stated that "we review the judgment independently and without deference to the trial court's determination."[13] An appellate court must evaluate the record "in a light most favorable to the nonmoving party."[14] Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion.[15]
 {¶ 27} Theories of res judicata are used to prevent relitigation of issues already decided by a court or matters that should have been brought as part of a previous action. "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action."[16] Res judicata "`applies to extinguish a claim by the plaintiff against the defendant even though theplaintiff is prepared in the second action (1) [t]o presentevidence or grounds or theories of the case not presented in thefirst action, or (2) [t]o seek remedies or forms of relief notdemanded in the first action.'"[17]
 {¶ 28} In Kovach v. Erie Islands Resort Marina, the court held that the purchase of an undivided one-fifteen thousandth interest in property which consisted of campsites and other resort and recreational facilities constituted an interest in real estate rather than for personal services.[18]
 {¶ 29} In the instant matter, the Sixth Circuit concluded that pursuant to Kovach, supra, appellants entered into transactions for the purchase of an interest in real estate rather than for personal services or membership in a club or organization.[19] Appellants failed to appeal the Sixth Circuit's decision to the United States Supreme Court. Rather, appellants ask this court to review and reverse the Sixth Circuit's decision. However, this is not the proper forum. Because this claim is barred by the doctrine of res judicata, appellee was properly granted summary judgment. Thus, appellants' second assignment of error is without merit.
 {¶ 30} In their third assignment of error, appellants contend that the trial court erred in dismissing counts I-III pursuant to Civ.R. 56 by determining that the close connection doctrine does not apply.
 {¶ 31} In Arcanum Natl. Bank v. Hessler, the Supreme Court of Ohio set forth five factors in order to determine whether a close connection exists between a transferee and a transferor:
 {¶ 32} "(1) Drafting by the transferee of forms for the transferor; (2) approval or establishment or both of the transferor's procedures by the transferee * * *; (3) an independent check by the transferee on the credit of the debtor or some other direct contact between the transferee and the debtor; (4) heavy reliance by the transferor upon the transferee * * * and; (5) common or connected ownership or management of the transferor and transferee."[20]
 {¶ 33} In the case sub judice, appellee's only relationship with appellants arises from the promissory notes that appellants signed in favor of appellee. Appellee was not in any manner a party to appellants' contract with the Resorts. Furthermore, appellants failed to submit any evidence that appellee was aware of a scheme by, or intent of, the Resorts to file bankruptcy. Appellee limited its lending to the purchasers of the campground interests and did not provide any financing to the Resort developers themselves. Also, appellee did not provide any on-site financing. Therefore, based on Arcanum, supra, appellants fail to show that a close connection existed between appellee and the Resorts. Thus, appellants' third assignment of error is without merit.
 {¶ 34} For the foregoing reasons, appellants' assignments of error are not well-taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Judgment affirmed.
Grendell and Rice, JJ., concur.
[1] Isaak v. Trumbull Sav. Loan Co. (Aug. 4, 2000), 11th Dist No. 99-T-0077, 2000 Ohio App. LEXIS 3530.
[2] Initially, the Group obtained commercial financing from Bank One of Youngstown, Ohio in 1985. In order to gain an influx of financing and an appearance of credit-worthiness, the Group bribed two Bank One officials. However, in 1986, senior Bank One officials uncovered the fraud and canceled its loan relationship with the Group. As a result, the Group approached appellee for additional financing. In 1988, the Resorts filed Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, case Nos. 688-01441 and 688-01415.
[3] Isaak v. Trumbull Sav. Loan Co. (C.A. 6, 1999),169 F.3d 390.
[4] Id.
[5] Appellants Edmond and Judith Gray agreed to a purchase price of $4,495 on January 3, 1987, and Appellants William and Lola Isaak agreed to a purchase price of $5,220 on January 4, 1987.
[6] The promissory notes did not include the FTC Holder Provision.
[7] State ex rel. Brookpark Entertainment, Inc. v. Cuyahoga Cty. Bd. of Elections (1991), 60 Ohio St.3d 44, 46, citing Goodson v. McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193,195. See, also, Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd. (1998), 81 Ohio St.3d 392, 395.
[8] Stanley v. Miamisburg (Jan. 28, 2000), 2d Dist. No. 17912, 2000 Ohio App. LEXIS 205, at *11, citing Scioto Mem.Hosp. Assn., Inc. v. Price Waterhouse (1996), 74 Ohio St.3d 474,481.
[9] (Citation omitted.) Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385.
[10] (Emphasis sic.) Dresher v. Burt (1996),75 Ohio St.3d 280, 296.
[11] CIv.R. 56(E).
[12] Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711.
[13] Id.
[14] Link v. Leadworks Corp. (1992), 79 Ohio App.3d 735,741.
[15] Id.
[16] Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 382.
[17] (Emphasis sic.) Id. at 383, quoting 1 Restatement of the Law 2d, Judgments (1982), Section 25.
[18] Kovach v. Erie Islands Resort Marina (1994),93 Ohio App.3d 11, 13.
[19] Isaak v. Trumbull Sav. Loan Co., 139 F.3d at 397, citing Kovach v. Erie Islands Resort Marina, supra.
[20] Arcanum Natl. Bank v. Hessler (1982), 69 Ohio St.2d 549,555, citing White Summers Uniform Commercial Code 481 (1972). See, also, Star Bank, Natl. Assn. v. Cirrocumulus Ltd.Partnership. (1997), 121 Ohio App.3d 731, 746.